IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARGO KLINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| ATLANTA HAWKS, LLC, | ) | |
| | ) | |
| Defendant. | ) | JURY DEMANDED |
| | ) | |

## COMPLAINT

COMES NOW the Plaintiff MARGO KLINE ("Plaintiff"), by and through her undersigned counsel, and files this Complaint, showing the Court as follows:

**Parties, Jurisdiction and Venue**

1.

Plaintiff is a Georgia resident who was employed with Defendant Atlanta Hawks, LLC ("Defendant" or the "Hawks") from June 2012 through March 13, 2017.

2.

Defendant is a for-profit corporation doing business in Georgia and within this judicial district.  It may be served with process through its registered agent T. Scott Wilkinson, 101 Marietta Street, Suite 1900, Atlanta, Georgia 30303.

3.

This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

4.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3), and N.D.Ga. Local Rule 3.1(B).

5.

Plaintiff timely filed a Charge of Discrimination alleging race and sex discrimination and retaliation with the Equal Employment Opportunity Commission (the "EEOC"). Plaintiff received a Notice of Right to Sue for her charge on or about December 20, 2017. This action is filed within 90 days of her receipt of the Notice of Right to Sue.

## Facts

6.

Plaintiff is a white female.

7.

Plaintiff began working for Defendant as a Community Development Coordinator in Defendant's Corporate Social Responsibility ("CSR") Department in June 2012.

8.

Throughout her career with the Hawks, Plaintiff was a loyal, dedicated Hawks employee who worked tirelessly and professionally to serve and promote the organization within the Atlanta community.

9.

In the summer of 2014, David Lee, a black male, was given a leadership position over the Hawks' External Affairs department, which included Plaintiff's department of CSR and another department, Basketball Programs.

10.

As Director of External Affairs, Mr. Lee promoted a culture of discrimination against white individuals. He further discriminated against Plaintiff because she is female. His discriminatory actions included, but were not limited to:

- being dismissive and exclusionary toward white employees, especially white females, including Plaintiff;

- making jokes about white culture;

- making it clear that he wanted to hire black individuals and did not want to hire white females for positions opening up in his department;

- expecting and requiring more of white individuals, especially white females, than black individuals in the department;

- promoting and hiring less qualified black individuals over white individuals, especially white females; and

- more readily and quickly offering raises and promotions to black individuals and males.

11.

Plaintiff complained to the Hawks about the discriminatory animus and favoritism exhibited by Mr. Lee, but the Hawks did not take action to stop the discrimination.

12.

After Plaintiff complained, she was subjected to retaliation and continued discriminatory treatment. The retaliation and further discriminatory treatment toward Plaintiff included, but was not limited to:

- subjecting Plaintiff to undue and unfair scrutiny of her work;

- crediting others with work that Plaintiff handled;

- withholding information from Plaintiff to impede her ability to do her job;

- refusing to recognize Plaintiff for her accomplishments; and

- gossiping and speaking negatively about Plaintiff to others in the department, creating an environment where others felt empowered to ridicule and belittle Plaintiff.

13.

As a result of this unlawful treatment of Plaintiff, employees in her department treated her with contempt, negativity, and a lack of respect.

14.

On February 3, 2017, Plaintiff went to lunch with Nzinga Shaw, a black female, and the Hawks' Senior Vice President and Chief Diversity and Inclusion Officer. Ms. Shaw told Plaintiff that she was meeting with everyone in Plaintiff's department to discuss their career paths and any concerns they had.

15.

At that lunch, Plaintiff shared her ongoing concerns about the inappropriate and discriminatory behavior she was experiencing and witnessing. Among other things, she reminded Ms. Shaw of a group discussion a few days prior in which Ms. Shaw showed Plaintiff and Mr. Lee a picture of a political campaign at a local HBCU (Historically Black College and University) saying, "Look at this, they have a group called 'Blacks for Trump.'" Mr. Lee stated that he refused to believe it, and "it was probably just a bunch of white people in black face." Although Ms. Shaw laughed at the comment at the time, at the lunch on February 3, 2017, Ms. Shaw told Plaintiff that Mr. Lee's comment was ignorant and said, "That could be a lawsuit!"

16.

At the lunch, Plaintiff also told Ms. Shaw that she felt that the Diversity and Inclusion Committee, of which Plaintiff was a member, was hypocritical; it "talked the talk" of diversity but did not "walk the walk." She gave several examples of the discrimination against white individuals and favoritism of black individuals to support what she said. Plaintiff also told Ms. Shaw she no longer could be a part of the committee given what she was experiencing and seeing.

17.

On February 21, 2017, Ms. Shaw and a new human resources manager, Tabala Dixon, a black female, met with Plaintiff. Prior to this meeting, Plaintiff had never been counseled, written up, or otherwise disciplined about any aspect of her performance.

18.

In this meeting, Ms. Shaw informed Plaintiff that she was being placed on a "Final Written Warning" due to "ongoing deficiencies in her conduct and/or performance." The warning stated that Plaintiff's complaints and concerns demonstrated a "me vs. we" attitude and should have been presented as "ideas and solutions" rather than complaints and concerns.

19.

The Final Written Warning included areas of improvement within "Interpersonal Skills" and "Communication" that Plaintiff was to work on.

20.

The Final Written warning also stated that if Plaintiff did not meet the required improvement by the "review date" (although no review date was ever specified), or if there were any further misconduct or cause for complaint of a similar nature, she was subject to termination.

21.

Following the Final Written Warning, no review date was ever set. Plaintiff attempted several times to meet with Ms. Shaw to better understand the reasons behind the written warning, but Ms. Shaw continually postponed or canceled the meetings they set.

22.

Plaintiff also requested a job description so that she could better understand the parameters of the day to day responsibilities for which she was being evaluated going forward, but Ms. Shaw, Ms. Carter, and Ms. Dixon ignored this request.

23.

Following the Final Written warning, a white human resources coordinator, Sarah Leist, was instructed by Ms. Dixon not to speak with Plaintiff and that if she did, Ms. Leist would lose her job.

24.

On March 13, 2017, just three weeks after the Final Written Warning, despite the fact that Plaintiff had complied with the terms outlined in the warning and despite the fact that the Hawks had not given any feedback to Plaintiff regarding her conduct and performance after the warning was issued, the Hawks terminated Plaintiff's employment.

**COUNT ONE: Violations of Title VII of the Civil Rights Act of 1964**

25.

Plaintiff incorporates paragraphs 1-24 of her Complaint into this Count.

26.

Defendant engaged in intentional race discrimination and harassment by treating Plaintiff less favorably than other employees based upon her race and gender in violation of Title VII.

27.

Defendant further engaged in retaliation against Plaintiff as a result of her complaints of discrimination and harassment based upon her race and gender.

28.

Defendant knew that the disparate treatment and harassment of, and retaliation against, Plaintiff violated Title VII.

29.

Plaintiff has suffered financial, mental and emotional damages as a result of Defendant's intentional acts.

30.

Defendant's acts were intentional and willful, with reckless indifference to Plaintiff's federally protected rights, and Plaintiff is entitled to an award of attorney's fees and costs.

## COUNT TWO: Violations of 42 U.S.C. § 1981

31.

Plaintiff incorporates paragraphs 1-24 of her Complaint into this Count.

32.

Defendant engaged in intentional race discrimination and harassment by treating Plaintiff less favorably than other employees based upon her race in violation of 42 U.S.C. § 1981.

33.

Defendant further engaged in retaliation against Plaintiff as a result of her complaints of discrimination and harassment based upon her race in violation of 42 U.S.C. § 1981.

34.

Defendant knew that the disparate treatment and harassment of, and retaliation against, Plaintiff violated 42 U.S.C. § 1981.

35.

Plaintiff has suffered financial, mental and emotional damages as a result of Defendant's intentional acts.

36.

Defendant's acts were intentional and willful, with reckless indifference to Plaintiff's federally protected rights, and Plaintiff is entitled to an award of attorney's fees and costs.

## PRAYER FOR RELIEF

Based upon the foregoing, Plaintiff respectfully requests that the Court:

(a)    Grant judgment to Plaintiff for her claims of race and gender discrimination, harassment and retaliation under Title VII, and award her damages, punitive damages, attorney's fees, costs and interest;

(b)    Grant judgment to Plaintiff for her claims of race discrimination, harassment and retaliation under 42 U.S.C. § 1981, and award her damages, punitive damages, attorney's fees, costs and interest;

(c)    Grant Plaintiff the equitable remedy of reinstatement or front pay in lieu of reinstatement;

(d)    Award Plaintiff her costs and attorney's fees;

(e)    Grant Plaintiff a jury trial; and

(f)    Grant Plaintiff all other relief the Court deems just and proper.

Respectfully submitted this 16th day of March, 2018.

SALTER THOMSPON LAW, P.C.

/s/ *Amanda S. Thompson*
Amanda S. Thompson
Georgia Bar No. 622854

Amanda S. Thompson
Salter Thompson Law, P.C.
2860 Piedmont Road
Suite 215
Atlanta, Georgia 30305

Tel:  (404) 247-0107
Fax:  (404) 920-4342
asalterthompson@gmail.com

ATTORNEY FOR PLAINTIFF MARGO KLINE